**JUNE OIL AND GAS, INC., and Cook Oil and Gas, Inc., Plaintiffs,**

v.

**Cecil D. ANDRUS, Secretary of the Interior of the United States; Dale R. Andrus, Colorado State Director of the Bureau of Land Management, Department of the Interior; Interior Board of Land Appeals, United States Department of the Interior, and James L. Burski, Edward W. Stubbing and Joan B. Thompson, Judges thereof, Defendants.**

**Celeste C. GRYNBERG and Dean G. Smernoff as Co-Trustees For the Stephen Mark Grynberg Trust, Plaintiffs,**

v.

**Cecil D. ANDRUS, Secretary of the Interior of the United States; Dale R. Andrus, Colorado State Director of the Bureau of Land Management, Department of the Interior; Interior Board of Land Appeals, United States Department of the Interior, and Joseph W. Goss and Joan B. Thompson, Judges thereof, Defendants.**

Civ. A. Nos. 79–K–1334, 79–K–1771.

United States District Court,
D. Colorado.

Jan. 16, 1981.

Philip G. Dufford and Phillip D. Barber, Welborn, Dufford, Cook & Brown, Denver, Colo., for plaintiffs.

Richard A. Jost, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This action is a consolidation of two cases involving three plaintiffs, June Oil and Gas, Inc., (June Oil), Cook Oil and Gas, Inc., (Cook Oil) and Celeste C. Grynberg and Dean G. Smernoff as co-trustees for the Stephen Mark Grynberg Trust (Grynberg Trust). The facts in each case are different; however both allege that they were denied oil and gas leases, although their drawing entry cards or offers received priority in the lottery, and such denials were an abuse of discretion, arbitrary, capricious, and otherwise not in accordance with law. Plaintiffs' contend that the Secretary of the Interior ignored established legal principles and the plain meaning and intent of the prohibition against multiple filings contained in 43 C.F.R. 3112.5–2. Both cases are before the court on cross motions for summary judgment.

## FACTS

### The Grynberg Trust

The Stephen Mark Grynberg Trust was established on August 1, 1969 by Jack Grynberg for his son Stephen Mark. Companion trusts were also established by the same instrument for Stephen's siblings Rachel Susan and Mariam Lela. These irrevocable discretionary support trusts are managed by co-trustees Dean G. Smernoff and Celeste C. Grynberg, the children's mother. In February 1978, drawing entry cards were filed for parcel CO–167 by each of the three trusts, Jack Grynberg and Celeste Grynberg. The Stephen Mark Trust received first priority on the parcel.

The Bureau of Land Management rejected all five offers as violative of the regulatory prohibition against multiple filings found at 43 C.F.R. 3112.5–2. Plaintiffs appealed to the Interior Board of Land Appeals which affirmed the bureau's rejection of the lease offers. *Celeste C. Grynberg, Dean G. Smernoff*, 44 I.B.L.A. 197, 203 (1979). The board reasoned that simultaneous offers for the same parcel by the children's parents and their trust and by a trustee of a trust and the trust proper both created a prohibited multiple filing under § 3112.5–2. *Id.* at 202, 203. Plaintiffs now seek review of the decision, damages, injunctive relief, declaratory relief and extraordinary relief.

### June Oil and Gas, Inc.

### and

### Cook Oil and Gas, Inc.

In June and July, 1978, June Oil and Cook Oil submitted offers for the simultaneous oil and gas lease drawings held by the Colorado State Office of the Bureau of Land Management. June Oil received first priority on parcel CO–337 and second priority on parcel CO–361, while Cook Oil received first priority on parcel CO–361. The bureau rejected each company's offer concluding that given the common officers, incorporators, address and other factors, the two corporations were interrelated and consequently had gained a greater probability of obtaining a lease. Both corporations appealed the decision and their cases were consolidated

for review before the Interior Board of Land Appeals which affirmed the decision. June Oil and Cook Oil now seek review of the decision, damages, injunctive relief, declaratory. relief, and extraordinary relief.

## SCOPE OF REVIEW

█ Jurisdiction to review the judgment of defendant board is conferred upon me by the Administrative Procedure Act, 5 U.S.C.A. §§ 701, *et seq.* Judicial review of administrative action is based upon the full administrative record before the agency decision maker at the time the challenged action was taken. I am authorized to conduct a *de novo* review. *Cooperative Services, Inc. v. United States Department of Housing and Urban Development*, 562 F.2d 1292, 1295 (D.C.Cir.1977). *See also Ballard E. Spencer Trust, Inc. v. Morton*, 544 F.2d 1067 (10th Cir. 1976). In reviewing the agency's decision, it is not my function to weigh the conflicting evidence adduced at the administrative proceeding, but rather to determine whether based upon the entire record there is substantial evidence to support the agency's determination. *Nickol v. United States*, 501 F.2d 1389 (10th Cir. 1974); *Roberts v. Morton*, 389 F.Supp. 87 (D.Colo.1975), *aff'd* 549 F.2d 158 (10th Cir. 1976), *cert. denied* 434 U.S. 834, 98 S.Ct. 121 (1977).

█ 5 U.S.C.A. § 706(2)(a) requires a finding that the agency decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Sabin v. Butz*, 515 F.2d 1061 (10th Cir. 1975). The burden of proving that agency action is arbitrary and capricious is upon the plaintiff. *Angel v. Butz*, 487 F.2d 260, 263 (10th Cir. 1973), *cert. denied* 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974); *Hiatt Grain & Feed, Inc. v. Bergland*, 446 F.Supp. 457, 478–479 (D.Kan.1978), *aff'd* 602 F.2d 929 (10th Cir. 1979), *cert. denied* 444 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980). To make this finding I must consider whether the decision was based on a consideration of the

relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823. Although this inquiry must be searching and careful, the standard of review is a narrow one. I am not allowed to substitute my judgment for that of the agency. *Id., American Petroleum Institute v. E. P. A.*, 540 F.2d 1023, 1029 (10th Cir. 1976) *cert. denied* 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). Rather, I must uphold agency action that has a rational basis for its treatment of the evidence. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974); *Coleman v. Darden*, 595 F.2d 533 (10th Cir. 1979); *American Petroleum Institute v. E. P. A.*, 540 F.2d at 1029; *Sabin v. Butz*, 515 F.2d at 1061; *Hiatt Grain & Feed, Inc. v. Bergland*, 446 F.Supp. at 4. If I determine that agency action has a rational basis, I must affirm that action even though I disagree with the agency's decision. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. at 290, 95 S.Ct. at 444. Finally, if the agency interpretation is of an administrative regulation, I must show a high level of deference to that interpretation. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964).

### The Grynberg Trust

The terms of the prohibition against multiple filing in § 3112.5–2 are not restricted to those instances where the applicants are owners. The regulation provides in pertinent part:

When any person, association, corporation, or other entity or business enterprise files an offer to lease for inclusion in a drawing, and an offer (or offers) to lease is filed for the same lands in the same drawing by any person or party acting for, on behalf of, or in collusion with the other person, association, corporation, entity or business enterprise, under any agreement, scheme, or plan which would give either, or both, a greater probability of successfully obtaining a lease, or interest therein, in any public drawing, held

pursuant to § 3110.1–6(b), all offers filed by either party will be rejected.

The Interior Board of Land Appeals has held a variety of oil and gas interests sufficient to violate this provision. *See e. g. William R. Boehm*, 36 I.B.L.A. 346 (1978); *Panra Corporation*, 27 I.B.L.A. 220 (1976); *Richard Donnelly*, 11 I.B.L.A. 170 (1973); *Schermerhorn Oil Corporation*, 72 I.D. 486 (1965).

The first basis upon which the board found a prohibited multiple interest to exist is where parents, and their children's trust file simultaneous offers for the same parcel. *Grynberg Trust*, 44 I.B.L.A. at 202. To reach this conclusion the trust instrument was examined to ascertain the interests of the beneficiary relative to his parents and to Celeste Grynberg as co-trustee. Article VI of the trust agreement delineates support provisions and provides:

It is the grantor's wish that the term "best interests" of the beneficiary be liberally construed and include not only the possibility of distributions for the *support, medical care and education (including professional education of said beneficiary but also the possibility of distributions for his comfort, convenience and happiness.* As illustrations, and not in limitations of the purposes for which distributions can be made under such standard, the trustee may make distributions or permit said beneficiary to travel for education or pleasure purposes or permit said beneficiary to purchase a personal residence or invest in a business. (Emphasis added.)

Parents are liable for the support obligations contemplated by the trust agreement. *Perkins v. Westcoat*, 3 Colo.App. 338, 33 P. 139 (1893) (support in general); *Union Pac. R. Co. v. Jones*, 21 Colo. 340, 40 P. 891 (1895) (medical expenses); *Haynes v. Haynes*, 41 Colo.App. 469, 586 P.2d 1010 (1978) (divorced parent may be liable for college education expenses); *VanOrman v. VanOrman*, 30 Colo.App. 177, 492 P.2d 81 (1971) (college education expenses). Any payment from the trust regarding these items would fulfill the obligation of the parents to support

their child. Therefore, the success of this trust directly benefits the parents.

Plaintiffs argue, however, that the language of Article IV, Section 1 of the trust agreement is controlling. This article states:

> *Income and Principal.* The trustee is hereby authorized in the sole discretion of the trustee at any time and from time to time, to distribute all or any part of the income and/or principal of each separate trust to the beneficiary of such trust, as the trustee deems desirable for the best interests of said beneficiary, or to accumulate all or any part of such net income and the same to the principal of such trust, to be held, administered and distributed as a part thereof; provided, however, *that no distribution shall be made pursuant to this section which would satisfy a legal obligation of the Grantor.* (Emphasis added.)

Plaintiff's argue that given this provision, the legal obligation of the parents to support their children is undiminished by the trust, since in Colorado assets of a minor may not be used by parents for the support of such minor unless the parents are unable to furnish support. *Perkins v. Westcoat,* 3 Colo.App. 338, 33 P. 139. However the board decision correctly points out that the language in Art. IV could not be used to deny a child in want, for to do so would negate the specific directions of the trust. Thus, in a financially disastrous situation, although such a possibility may be remote, the parents could use the trust assets for the financial support of the children. The trust instrument also provides for such payments to be made directly to the child's guardian. Trust Agreement, Art. VIII, Sec. 2. Hence there is a benefit to the parents in the possibility of direct support payments for the child. *Farrel L. Lines, Trustee and Winston Trust,* 40 I.B.L.A. 91, 96.[1]

Plaintiff's contend that the possibility of a financial disaster so devastating to the Grynbergs that they would be unable to support their children is so remote that it cannot constitute a benefit such that a prohibited multiple filing exists. This argument is unpersuasive. While the chance of financial disaster may indeed be remote, if in fact it does occur, the parents will directly benefit from the trust. In addition, the parents receive the present and immediate benefit of knowing that if such a disaster were to occur, the trust assets of their children could be used to support them. Given the language of the trust agreement, there is no basis for finding the board's interpretation arbitrary, capricious, abusive of discretion, or otherwise not in accordance with law.

The second basis upon which the board found a multiple filing was filing by a co-trustee individually and also on behalf of the trust. *Grynberg Trust,* 44 I.B.L.A. at 203. The board reasoned that the duty of loyalty demanded of a trustee requires avoidance of any situation or transaction in which personal and fiduciary interests might conflict. The Restatement (Second) of Trusts, § 170 states that a trustee violates his duty to the beneficiary if he enters into a substantial competition with the interests of the beneficiary. Also, the Tenth Circuit Court of Appeals has specifically held that a trustee may not compete with his beneficiary in the acquisition of property. *Wootten v. Wootten,* 151 F.2d 147, 150, 161 ALR 1027 (1945). *See also,* 2 *Scott on Trusts,* § 170.21 (3rd Ed. 1967). Therefore, the board concluded, since the trustee would be deemed to hold his personal offer in trust for the beneficiary, filing by a co-trustee individually and also on behalf of

---

1. *Farrel* also raises a similar point. The board states:

"..., except in the most extraordinary circumstance, it would be sophistry to contend that the minor children of a family unit have no beneficial interest in the relative wealth or poverty of their parents. Therefore, even if the parents were successful in insulating themselves entirely from enjoyment of any advantage derived from the assets of their minor children, it would still be necessary, ..., to demonstrate that the children's circumstances would remain unchanged regardless of whether their parents attained great wealth or were pauperized.

the trust is a prohibited multiple filing, requiring the rejection of the offers. *See McKay v. Wahlenmaier*, 226 F.2d 35 (D.C. Cir.1955).

Plaintiff's contend that since the trust agreement, Art. 8, Sec. I(j), expressly authorizes the trustee to invest and reinvest in oil, gas, or other mineral interests, such conduct cannot be a breach of trust. This argument is likewise without merit. That a trustee may properly file a simultaneous drawing entry card in the name of a trust for a minor is well settled and not in dispute. *Margo Panos Trust*, 28 I.B.L.A. 1 (1976). The question, however, is whether the trustee can also file as an individual in the same drawing. Plaintiffs claim that since the grantor, Jack Grynberg, was regularly making oil and gas investments when the trust was formed, there would be no breach of the trustee's fiduciary duty by simultaneously filing as a trustee and as an individual. However, authorization for the trustee to invest in oil, gas, and mineral interests on behalf of the trust and on his own behalf is not authorization to compete for identical interests as trustee and as an individual. In addition, in this jurisdiction a trustee cannot compete with his beneficiary in the acquisition of property. *Wootten v. Wootten*, 151 F.2d at 147. Hence, in a breach of trust suit by the beneficiary of the trust, the beneficiaries would prevail, as in *Wahlenmaier*. Thus, the trustee would have gained an unfair advantage for the trust.

Plaintiffs also contend that there was not "substantial" competition, as required by the Restatement of Trusts. Plaintiffs also argue that *Wahlenmaier* is readily distinguishable from the instant case. In *Wahlenmaier*, the president and vice-president of a corporation filed on behalf of themselves and the corporation. The president of the corporation obtained first priority on the lease. The court held that the president was in a fiduciary relationship with the corporation and that in a suit by the stockholders he would be found to hold the lease in a fiduciary capacity for the use and benefit of the corporation. Hence, there was a prohibited multiple filing. Given *Wootten* a similar result would be reached here and

the trustee would be deemed to hold the lease in a fiduciary capacity for the use and benefit of the trust. Contrary to plaintiff's contentions, the fact that the faultless beneficiary would be penalized by losing the lease rather than the officer who breached his fiduciary duty is immaterial. The other people filing for the lease were also faultless and they have been harmed by plaintiff's multiple filing on the parcel in question. Similarly, the fact that secretive and deceitful actions, found in *Wahlenmaier*, did not take place in this case is also immaterial. As the board correctly points out, it is not necessary that the parents have conspired to evade the regulations. If the applicant is effectively given a greater chance of success in the drawing, it is inherently unfair whether there has been collusion or not. *Richard Donnelly*, 11 I.B.L.A. 170; *Schermerhorn Oil Corporation*, 72 I.D. 486 (1965).

The board's interpretation of *Wahlenmaier* and its reasoning regarding the fiduciary relationship of a trustee to his beneficiary is not arbitrary, capricious, abusive of discretion or otherwise not in accordance with law. Summary judgment in favor of the defendants is appropriate.

### June Oil and Gas, Inc.

### and

### Cook Oil and Gas, Inc.

The board found that June Cook owns 100 per cent of June Oil and is chairman of its board of directors. Michael Cook owns 100 per cent of Cook Oil and is chairman of that corporation. At the time of the lease offers, the officers of each corporation were as follows:

| | June Oil | Cook Oil |
|---|---|---|
| President/director | Michael Cook | June Cook |
| Secretary/treasurer/director | Adrianna Van Der Stok | Adrianna Van Der Stok |
| Vice-President for land administration | Madeline A. Meyer | Kati P. Ward |

All of these directors, including the chairmen of the boards, and officers were authorized to sign on behalf of their corporations with respect to oil and gas leasing matters. The articles of incorporations for each company state identical purposes, list the same

incorporators, and designate initial registered officers with the same address. In fact the articles of incorporation are identical except for the names of the initial directors and registered agents. They were executed and filed with the State of Colorado on the same date. The two corporations have the same address, same business facilities and same personnel. *June Oil and Gas, Inc. and Cook Oil and Gas, Inc.*, 41 I.L.B.A. 394, 396–397.

The board relied on *Schermerhorn Oil Corp.*, 72 I.D. 486 (1965) to find a prohibited multiple filing in this case. In that case Kenwood Oil Corp. and Schermerhorn Oil Corp. both filed offers for a single parcel. The offers were rejected for two reasons. First, it was found that Schermerhorn Oil Corp. owned 29 per cent of the stock of Kenwood Oil Corp. Therefore Schermerhorn had a one and one-fourth chance of obtaining a lease thereby creating an inherently unfair situation despite lack of collusion between the parties. The board also rejected Kenwood's offer because of the interrelationship of the two companies. The board noted that the companies had the same officers, shared the same street address, filed at the same time, made identical offers, were represented by the same attorneys and submitted identical briefs in the proceedings before them. *Id.*, 72 I.D. 490–491. This is very similar to the instant case and is sound authority for finding that there was a prohibited multiple filing.

Plaintiffs correctly point out that in *Schermerhorn*, one corporation owned stock in the other, while in this case the corporations are independently owned. However, in *Schermerhorn* the board also rested its decision on the interrelatedness of the two companies, thereby creating an unfair advantage for both of them. Plaintiffs are also incorrect about the requirement of finding collusion of the parties. Such a finding is not necessary, according to *Schermerhorn*, when an inherently unfair situation, as in the present case, is created.

The board also applied the theory delineated in *Wahlenmaier*. There, it was held that when an officer of a corporation files on behalf of the corporation and on his own behalf he is usurping a corporate opportunity and thereby breaching his fiduciary duty to the corporation. As a result he holds it in trust for the corporation creating a prohibited multiple filing. In this case, by being a director in both corporations and filing on behalf of both corporations for the same parcel, there is a breach of fiduciary duty to one corporation when a second filing is made for the other because the first corporations chances of obtaining a lease are lessened by the second filing. Such dual filings could be justified only if they were beneficial to both; that is if they increased each corporations opportunity of obtaining an interest in the desired lease. As such the corporations are gaining unfair advantage and thereby provide additional support for finding a prohibited multiple filing.

Plaintiffs have not carried their burden of showing the agency's decision was arbitrary, capricious, abusive of discretion or otherwise not in accordance with law. Summary judgment in favor of the defendants is appropriate.

In both cases the agency has carried out its duty of protecting other offerors from being put to an unfair advantage and providing each with an equal opportunity of obtaining an interest in the leases. The board has acted in accordance with the regulations and its past decisions. The defendants' interpretation of regulations is given deference and will not be overturned merely because reasonable minds can differ. It is therefore

ORDERED that Celeste Grynberg and Dean Smernoff's motion for summary judgment is denied and defendants motion for summary judgment is granted. It is further

ORDERED that June Oil and Gas, Inc. and Cook Oil and Gas, Inc.'s motion for summary judgment is denied and defendants motion for summary judgment is granted. Each party to bear his, her or its own costs.